IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE      *   MDL Docket No. 2004
                                   4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS  *
                                   Case No.
LIABILITY LITIGATION           *   4:12-cv-179 (M. HANSON)

_____

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Marie Hanson was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Hanson brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Hanson also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mrs. Hanson's husband John brought a loss of consortium claim. Mentor contends that the Hansons' claims are barred by the applicable statutes of limitation. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 43 in 4:12-cv-179) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to the Hansons, the record reveals the following.

The Hansons live in Louisiana, and all of Mrs. Hanson's medical treatment relevant to this action occurred in Louisiana.  Mrs. Hanson visited her doctor, Dr. Tobin Grigsby, with symptoms of stress urinary incontinence.  Dr. Grigsby implanted Mrs. Hanson with ObTape on November 28, 2005.  In March 2009, Mrs. Hanson noticed that some of the ObTape was protruding from her vagina, and she cut it off with a pair of

surgical scissors.  At the time, Mrs. Hanson was experiencing vaginal bleeding, vaginal discharge, and energy loss; she attributed those symptoms to ObTape.  Hanson Dep. 105:3-107:7, ECF No. 43-5.  Mrs. Hanson sought medical treatment from a nurse practitioner, who referred her to a gynecologist.  The gynecologist found a vaginal tear and referred Mrs. Hanson to Dr. Destin Black, a gynecological oncologist.  At the time, Mrs. Hanson believed that the ObTape was causing her symptoms, and she wanted it removed from her body.  *Id.* at 103:22-104:18.  Dr. Black told Mrs. Hanson she thought there was a problem with the ObTape and referred her to Dr. Alexander Gomelsky.

Dr. Gomelsky examined Mrs. Hanson in March 2010, found an extrusion of the ObTape, and told Mrs. Hanson that the ObTape needed to be removed.  *Id.* at 108:7-109:5.  Dr. Gomelsky and Mrs. Hanson discussed her options for treatment of her incontinence, and Mrs. Hanson decided on a more invasive non-mesh solution because she did not want additional mesh-related complications.  *Id.* at 111:1-112:16.  In April 2010, Dr. Gomelsky removed the ObTape and performed a procedure designed to alleviate Mrs. Hanson's incontinence.

The Hansons filed their Complaint on July 13, 2012.  *See generally* Compl., ECF No. 1 in 4:12-cv-179.  Mrs. Hanson brought claims for personal injury under a variety of

theories, including negligence, strict liability/defective design, strict liability/failure to warn, strict liability/defective manufacturing, breach of warranty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Mr. Hanson's claim is for loss of consortium.

DISCUSSION

The Hansons filed their action in this Court under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. The parties agree that Louisiana law, including its statutes of limitation, apply to the Hansons' claims because the Hansons are Louisiana residents and all of Mrs. Hanson's medical treatment relevant to this action occurred in Louisiana. *See* La. Civ. Code art. 3515 (requiring that cases be "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue").

Mentor argues, and the Hansons agree, that the Hansons' claims should be construed as claims under the Louisiana Products Liability Act. *See* La. Stat. Ann. § 9:2800.52 (establishing Louisiana Products Liability Act as the

"exclusive theories of liability for manufacturers for damage caused by their products"). The parties also agree that the Hansons' claims are subject to a one-year statute of limitations. *See* La. Civ. Code art. 3492 (establishing one-year statute of limitations for "[d]elictual actions"); *Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 99 So.3d 739, 741 (La. Ct. App. 2012) (noting that La. Civ. Code art. 3492 applies to claims under the Louisiana Products Liability Act).

Louisiana has a discovery rule called the doctrine of *contra non valentem*. The statute of limitations, called "the prescriptive period" in Louisiana, begins to run "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 828 So.2d 502, 510 (La. 2002). In other words, the statute of limitations begins to run when the plaintiff has enough notice "to excite attention and put [her] on guard and call for inquiry." *Id.* at 510-11. "The prevailing wisdom is that prescription begins to run when the defect manifests itself, not on the date the underlying cause of the defect is found." *Am. Zurich Ins. Co.*, 99 So.3d at 741. It is true that there must be "more than a mere apprehension something might be wrong." *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 894 (5th Cir. 2010) (quoting *Strata v. Patin*, 545 So.2d 1180, 1189 (La. Ct. App.

1989).   "But when a plaintiff suspects something is wrong, he must 'seek out those whom he believes may be responsible for the specific injury.'"  *Id.* (quoting *Jordan v. Emp. Transfer Corp.*, 509 So.2d 420, 423 (La. 1987).  And "[w]hen a plaintiff acts reasonably to discover the cause of a problem, 'the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant.'"  *Id.* (quoting *Jordan*, 509 So.2d at 424) (second and third alterations in original); *accord Mistich v. Cordis Mfg. Co.*, 607 So.2d 955, 956 (1992) (finding that plaintiff had constructive notice that pacemaker might be defective when she was informed that it would have to be replaced).

Mrs. Hanson contends that she did not reasonably suspect that her injuries were caused by a defect in ObTape until one of her daughters suggested in 2011 or 2012 that she should bring a lawsuit against Mentor.  But by 2010, two different doctors had told Mrs. Hanson that there was a problem with her ObTape and that it needed to be removed.  And by April 2010, Mrs. Hanson herself believed that ObTape caused her symptoms and wanted it removed from her body.  At that time, she had a duty to act reasonably to discover the cause of her problems with ObTape, but she did not take any action until more than a year later.  The Hansons' action is therefore time-barred.

CONCLUSION

As discussed above, the Hansons' action is time-barred, so Mentor's Motion for Summary Judgment (ECF No. 43 in 4:12-cv-179) is granted.


IT IS SO ORDERED, this 4th day of August, 2015.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT
JUDGE
MIDDLE DISTRICT OF GEORGIA